TREASURE COUNTY, MONTANA, A BODY POLITIC AND CORPOR-
ATE, PLAINTIFF AND RESPONDENT, *v.* JOHN L. BERGGREN
AND FILTER, INC., A WYOMING CORPORATION, DEFENDANTS
AND APPELLANTS.

No. 11563.
Submitted September 16, 1969.
Decided October 8, 1969.
459 P.2d 271.

Sandall, Moses & Cavan, Russell K. Fillner, Billings (argued), for defendants and appellants.

John A. Forsythe, Longan & Holmstrom, Franklin S. Longan, Billings (argued), for plaintiff and respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of Treasure County from an order denying a motion for new trial and to amend findings of fact and conclusions of law.

The action was commenced by Treasure County as plaintiff to cancel a lease, quiet title and obtain an injunction to restrain the defendants from trespassing upon or removing from plaintiff's lands bentonite or other minerals.

A lease was entered into between the parties on August 10, 1964 whereby the plaintiff agreed to lease certain lands within Treasure County to the defendants, Berggren and Filter, Inc., for a period of three years. The purpose of the lease was

to allow defendants to explore for, mine and remove merchantable bentonite. Upon the expiration of the primary lease period it was provided that the defendants could continue to lease such lands, "* * * as long thereafter as bentonite shall be produced and marketed from said lands in commercial quantities; * * *." The lease provided for an advance royalty of $500 each year with all such payments being credited against further removals, and also provided for a royalty of 55 cents per ton of bentonite extracted from the lands. The lease was subsequently assigned to the defendant, Filter, Inc., John L. Berggren being the president and majority stockholder.

At the trial defendant Berggren gave evidence that about 10 days before the termination of the primary lease he moved onto the leased premises with his equipment and began to extract bentonite and place it in burlap sacks with the help of another man. Both men worked a total of one day, beginning on the afternoon of August 1, 1967, and ending at noon on August 2, 1967. The production from their work, although in dispute, was from four to eight tons. At noon on the second day the defendant Berggren and his helper were eating lunch when the sheriffs of Treasure and Rosebud counties arrived and served defendant Berggren with, in his own words, a "no trespass order", which was in fact a show cause order in an unrelated action. Defendant Berggren testified that he believed the order required him to move off the land until a court decided whether he had a right to be there. Thus Berggren argues the production of bentonite ceased and on August 11, 1967 defendants received notice of cancellation of the lease from the plaintiff, which notice was dated July 25, 1967, and mailed by the county the same day.

The trial court found that the defendants had failed to produce and market in commercial quantities, or in any quantity at all, any bentonite from the leased lands. It also found that the defendants were not prevented by the plaintiff from producing and marketing bentonite in commercial quantities.

4

From these facts the lower court concluded that the lease expired at the end of the three year primary term as a matter of law.

The defendants present one basic issue for this Court to determine: whether the district court was correct in finding that bentonite was not produced and marketed from the leased land in commercial quantities during the primary term of the lease.

The lands described in the lease here are the same as in the lease dated September 1, 1943, which this Court considered in Treasure County v. Mountain States Clay Products, 132 Mont. 12, 313 P.2d 1028. The terms of both leases are nearly identical. There are minor differences in amounts of royalty payments. Annual payments are required under both leases, but under the present lease such payments are termed advanced royalty. The present defendant, John Berggren, was an officer and director of the defendant corporation in the prior lease dispute. In the prior dispute the defendant had actually produced, marketed and delivered 30 tons of bentonite; in the present dispute defendant has extracted, at the most, accepting his own disputed testimony, 8 tons of bentonite on a 25 ton order and no sale has taken place.

We noted the definition of the term commercial production in the Mountain States Clay case, supra. The definition came from a prior case dealing with oil but we found that it was equally applicable to bentonite production:

" 'We think the true criterion for determining whether a well is a commercial producer is: Will it pay a profit to the lessee, over operating expenses, for its operation? If it will, although the profit may be small and may never repay the cost of development, the well may be said to produce oil in paying quantities.' " 132 Mont. 12, 16-17, 313 P.2d 1028, 1031.

In the above noted case we were concerned with whether defendant had obtained a profit in excess of its operating expenses. The annual rental payments, we said, were an operat-

ing expense, but not the royalty payments. Defendant's sale of 30 tons of bentonite resulted in a gross receipt of $21, but the annual rental payment amounted to $393.75. Thus it was apparent that defendant did not produce bentonite in commercial quantities.

In the present case the defendant Berggren goes through an elaborate set of calculations contending he has made a profit over and above his operating expense. He claims the 8 tons of bentonite he mined resulted in a net operating profit of $28.60. But nothing has been shown to prove an actual sale of the 8 tons mined; merely an order for 25 tons which was never delivered. And even if there had been such a sale there was an annual rental payment of $500 which is an operating cost exceeding the amount receivable under the 25 ton order. Thus by no stretch of the imagination could it be said the defendants were commercially producing bentonite.

As a second issue defendant Berggren contends that he was stopped from producing more bentonite by the sheriff of plaintiff county and thus he claims the plaintiff is estopped from declaring forfeiture of the lease because of the acts of one of its officers. With this we cannot agree. Even if the sheriff's statement did stop him from working, it did not arise from any action by the plaintiff but rather from an unrelated law suit in which the plaintiff was not a party.

With the defendants failing to produce and market bentonite in conformity with the lease, which failure was not in any way caused by any county actions upon which the defendants could justifiably rely for equitable relief, the lease became terminated in conformity with its own terms.

The judgment is affirmed.

MR. JUSTICES HASWELL, JOHN C. HARRISON and CASTLES and THOMAS DIGNAN, District Judge, sitting in place of MR. JUSTICE JOHN W. BONNER, concur.